### JAMES B. KNOX *v.* THE TOWN OF WHEELOCK.

*Highway. Injury on Bridge. Notice. Evidence. Cross-Examination.*

NOTICE. The notice alleged: "He says that said highway, to wit, said bridge, was insufficient and out of repair, in this that stringers to said bridge were decayed and broken and the planks covering said bridge were so worn and decayed that they would not and did not sustain the weight of the horse which he was then driving over said bridge, but gave way and let his said horse through said bridge, throwing him from the carriage in which he was then riding, which was the cause of said injury; and he says that the injuries he at that time sustained were to his stomach, bowels, liver, kidneys, legs, hips, shoulders, arms, back, and spine, and a breach low down on the left side, and was such that a discharge of bloody mucus has followed from his bowels, and he has become lame and stiff in back and limbs, from the effect of which he is wholly incapacitated for labor of any kind, and has been confined to the house, and has suffered great pain." It appeared by evidence that there was a hole in the plank through which the horse stepped. *Held*,

Knox *v.* Wheelock.

1. That the notice as to the defect was sufficient.
2. Also as to the injuries; and that injuries subsequently developed and occasioned by the injuries described, could be recovered for.
3. That evidence was admissible to show that the plank, adjoining the one through which the horse stepped, "looked old and rotten," although there was no evidence tending to show that its bad condition contributed to the accident, especially under the ruling of the court, directing the jury to consider it with the evidence tending to show when the planks were put on to the bridge, as evidence tending to prove that the plank in question was defective.
4. HEARSAY. CROSS-EXAMINATION. The answer of a witness, on cross-examination, that he *heard* afterwards, and thought on the same day that the accident happened, that the plaintiff had been thrown off from a hearse, although hearsay was not prejudicial to the defendant, as it had no tendency to show whether he had been thrown off or not.
5. A question, put by the plaintiff on cross-examination to one for the purpose of impeaching another of the defendant's witnesses, inquired of as to new matter, may or may not be error, depending on the answer; if impeaching, it would be error; if corroborating, not error.
6. A physician, as an expert, had examined the plaintiff in 1879-80, and during the trial, and was properly allowed to testify, that he did not think his symptoms, as a whole, complained of in 1879, were inconsistent with those at his last examination.
7. The question to a physician, "How well satisfied are you that the plaintiff is suffering from nervous injury," is objectionable in form, in assuming that the plaintiff was suffering; but when the answer did not tend to show such suffering, it did not prejudice the defendant.
8. A witness was properly allowed to state: "Dr. S. asked the plaintiff if he ever saw any signs of having a rupture about him; he (plaintiff) said he never did," as it tended to impeach Dr. S., who had in substance denied having had such conversation.

ACTION for injury on the highway. Trial by jury, December Term; 1882, Ross, J., presiding. Verdict for the plaintiff. The notice is sufficiently stated in the head notes.

The plaintiff's evidence tended to show that on the 8th day of June, 1879, while crossing a bridge of about eleven feet span, on the road from Wheelock to Sutton, his horse's foot went through a hole in the bridge near the Sutton side, or broke through the plank; that the horse keeled over, turned a somersault, jerked the carriage very near to the up stream side of the bridge; that by means thereof the plaintiff was thrown or pulled over the dasher on to the ground, and so injured that he passed blood from his bowels the next morning and for some little time thereafter, which was followed by mucus, and, after about a month, with a relaxed condition of the bowels, like diarrhea, which had continued to the time of the trial, but not to complain of for the last year;

and had ever since been lame in his left leg, unable to labor; that the gluteal muscle on the left side hung down lower than the one on the right side; that his neck and back pained him; that he had trouble in turning his head; that he had some paralysis or prickling sensations or sensation of running water up and down the left leg and side, which his evidence tended to show might result from an injury to the nerves and muscles of the small of the back or the periphery of the nerves of the bowels reflected to the nerves of the small of the back.

The defendant introduced evidence tending to show that the plaintiff had long before this accident been nearly totally paralyzed by diphtheria, and had ever since complained of suffering in his neck and back from the effects of the diphtheria; that he had from time to time been lame before the accident; that he had had a kidney trouble that gave him a weak and lame back; that he had for some years before been greatly troubled with bleeding piles; that on the morning of the day of the accident, before starting with the hearse he told some of the bearers and others at the funeral that he was unwell and ought not to have gone, and that he had been passing blood from his bowels for a day or more; that the plaintiff was not thrown from the hearse at all, but jumped down over the right wheel and caught hold of it to keep the hearse from going off the side of the bridge down to the brook; that he received no injury whatever; that he had often been seen since the accident walking or working without any indication of lameness, and that his whole claim was a sham.

The plaintiff's evidence tended to show that there was a hole in the bridge through which the horse stepped.

The defendant introduced witnesses who testified that they passed over or examined the bridge on the day of the accident, or within two or three days before, and that there was no hole there then; and also evidence tending to show that the plank through which the horse broke, with others, had been put in new about three years before; that it had been examined by the highway surveyor with an iron bar and found sound the fall or spring before; that it gave way on this occasion only because a crack or seam had formed at a knot in the edge of the plank extending up the plank; and that the weight of the horse on the part between the crack and the edge of the plank had extended the crack up to the stringer, where it broke square off, making a three-cornered hole, the widest part being at the stringer. There

was no evidence or claim that there was any other hole in the bridge except the one through which the horse's foot went.

In view of this evidence, the defendant asked the court to rule that the plaintiff could not recover under the notice and declaration, if the accident occurred by reason of a hole that existed in the bridge before, and at the time of the accident, and not by reason of the horse's breaking through the plank. The court refused so to rule; but did rule and charge that the plaintiff might recover if a hole before existed through which the horse's foot went, if the jury should find that by reason of the rottenness and worn condition of the plank some breaking occurred when the horse's foot went through.

The defendant objected to the admission of the notice in evidence, because it was insufficient in its description of the injury, and of the part or parts of the body injured, and of the nature of such injury, and its effect upon the plaintiff's health; but the court admitted the notice.

The plaintiff was allowed, against the defendant's objection and exception, to testify that about a month after the injury he had for a long time, and down to the time of trial, a diarrhea, which he had not had before; that this followed the bloody and mucous discharges from his bowels. This was specially objected to on the ground that the notice made no such claim.

In the plaintiff's opening testimony he was allowed to show by one Anson Gray, against the defendant's objection and exception, that after the accident, and on the same day, he stepped on to the plank adjoining the one through which the horse's foot went, and thought that adjoining plank was tender.

George Barber, another witness introduced by the plaintiff in the opening, was allowed to testify, against the defendant's objection and exception, that after the accident he examined the plank by the side of the one through which the horse's foot went; that "it looked rotten," and that he "saw John Barber testing it with his heel. He would bend it in with his heel in places near the hole and near the Wheelock side." There was no evidence tending to show that the bad condition of this adjoining plank in any way contributed to the accident.

The plaintiff introduced one Dr. Carter as a witness, who, after testifying that he attended the plaintiff after the accident and gave him some medicine, and that he "found he was passing blood," that he saw two ounces of blood; and was allowed, against the defendant's objection and exception, to testify as follows: "I learned he had received an injury." The witness

further testified, without objection, that hemorrhage from the bowels could be referred to an external injury.

The defendant introduced as a witness one Asa L. Barber, who testified, among other things, that he was in the funeral procession some little distance back of the hearse, where he could not, and did not see the accident, but heard a disturbance; that he at once ran forward and the plaintiff was then standing in the road, having hold of the horse or harness; that he, did not see him upon the ground; that he noticed no dirt on his clothing, and heard nothing said about plaintiff's being thrown out or that led him to suspect that he had been thrown out.

On cross-examination the plaintiff was allowed, against the defendant's objection and exception, to show by this witness that he some time afterwards heard that the plaintiff was thrown off, and that he thought he heard so that day.

Dr. Brooks had been used as a witness by the defendant, he having made an examination of the plaintiff during the trial in company with Dr. Browne and other physicians and in the presence of the counsel on both sides. No inquiry was made of him as to whether at that examination he ascertained whether or not the plaintiff was then suffering from piles; nor was he asked anything upon that subject, except as to the effect of the piles upon the kidneys and lower part of the back. He was, on cross-examination by the plaintiff, asked if he made an examination in relation to the piles; he replied that he did, and that he found at the orifice two external evidences of piles, and no indication then existing of internal piles.

Against the defendant's objection and exception, the plaintiff was then allowed to ask the witness if, at the time of the examination, he did not say that there were no indications of piles; to which he replied that he said there were no indications of internal piles.

Dr. H. S. Browne was then called by the defendant and testified that he was present at the examination of the plaintiff, and that the remnants of two external hemorrhoidal tumors were plainly visible. On cross-examination, the plaintiff was allowed to ask, against the defendant's objection and exception, if Dr. Brooks did not announce at the time of the examination that there was no evidence of piles; to which the witness replied: "No announcement was necessary for the external evidence. Think Dr. Brooks announced no internal evidence of piles."

In rebuttal, the plaintiff was allowed to show by one witness, against the defendant's objection and exception, that he had

known the plaintiff before the accident about fourteen years, had worked with him, and that he did not know that he had the piles.

Dr. T. R. Stiles testified, that he was one of the bearers at Mrs. Barber's funeral; that he rode in front of the hearse; that he was looking back at the time of the accident; that he immediately jumped out, ran back, saw the plaintiff step down over the wheel on to the ground, and seize hold of the wheel; and that he was not thrown on to the ground at all.

In rebuttal, the plaintiff called one Waldron Brown who was allowed, against the defendant's objection and exception, to testify that some time after the accident, he had a talk with Dr. Stiles, as follows: " I said, after this suit is over Knox will throw away his cane in a week, as you did after we settled with you. He said, ' No, I was hurt and Mr. Knox was hurt.' " Dr. Stiles had, when on the stand for the defendant, on cross-examination by the plaintiff, denied having such conversation with Brown. Dr. Stiles' testimony tended to show that the plaintiff was not thrown off or injured on that occasion.

Silas Gray, a witness for the plaintiff, was allowed to testify as follows:

" The plank next to it (the broken one), looked old and rotten. I put my well leg on plank, and spoke of it; it seemed to be a tender plank;" and, "Dr. Stiles asked the plaintiff if he ever saw any signs of having a rupture about him; he (Knox) said he never did." The plaintiff and one of his witnesses had in the opening testified to this conversation with Dr. Stiles when at the village, and Dr. Stiles had in substance denied it. The defendant had before this introduced a witness who testified that the plaintiff told him that spring, before the accident, that he thought he had a rupture coming upon him. It was conceded that the plaintiff soon after the accident claimed that he had been ruptured by the accident; but no claim was made on the trial that the plaintiff in fact ever had any rupture.

Dr. G. B. Bullard made an examination of the plaintiff in October, 1879, and another in December, 1880, and another during the present trial, at the request and in the employment of the defendant. He was used as a witness by the plaintiff; and among other things, against the defendant's objection and exception, was allowed, in answer to the plaintiff's inquiries, to testify as follows: " I don't think his symptoms, as a whole, that he complained of in 1879, are inconsistent with his symptoms now."

Against like objection and exception, but at the plaintiff's risk, the plaintiff was allowed to ask this witness as follows: "How well satisfied are you that the plaintiff is suffering from nervous injury?" to which the witness replied: "I don't know how to answer. I think there is more trouble with that group of muscles on the left side than two years ago, if there was any two years ago."

Defendant's requests:

1. That under the notice the plaintiff cannot recover for any paralysis; 2, nor for any trouble in his neck or difficulty in turning his head; 3, nor for injury to his glutæus maximus muscle; 4, nor for any injury claimed by the evidence. 5, The plaintiff claimed that his horse went through a particular hole in the bridge, and that this hole was in a particular plank and caused the accident. He cannot claim that he is entitled to recover, because the other planks or parts of the bridge were insufficient and unsafe.

The court refused to comply with these requests; but charged that if the case was otherwise made out the plaintiff might recover; and for the particular items named in the requests so far as the evidence established, they were the result of the injury received to the nerves of the spine, or bowels, or muscles of the back; and that the jury might consider the evidence tending to show the adjoining plank was tender or decayed, together with the evidence tending to show the time when said planks were put into the bridge as evidence tending to show that the plank through which the horse's foot passed was in the same condition and insufficient.

*Belden & Ide*, and *Safford*, for the defendant.

The court should have complied with the defendant's 5th request.

There was nothing in either the notice or declaration to give the defendant the slightest intimation that there would be any claim that a hole was in the bridge before the accident, and that the town had been remiss in not discovering and guarding against it. *Bartlett* v. *Cabot*, 54 Vt. 242. The evidence, that the plank adjoining the broken one "looked rotten," was not admissible. *Coates* v. *Canaan*, 51 Vt. 131. Nor was Barber's testimony admissible. *Downer* v. *Strafford*, 47 Vt·

---
Knox *v*. Wheelock.
---

579 ; *Nones* v. *Northouse*, 46 Vt. 587 ; *Borden* v. *Powers*, 37 Vt. 619 ; *State* v. *Carleton*, 48 Vt. 636 ; *Lyon* v. *Kidder*, 48 Vt. 42 ; *Clark* v, *Boardman*, 42 Vt. 668 ; *Huse* v. *Preston*, 51 Vt. 245 ; *Commonwealth* v. *Harwood*, 4 Gray 41. The ques-tions asked Drs. Brooks and Browne were improper. *State* v. *Hopkins*, 50 Vt. 331 ; *Fairchild* v. *Bascomb*, 35 Vt. 417 ;. *Wing* v. *Hall*, 47 Vt. 218 ; *Thornton* v. *Thornton*, 39 Vt. 152. It was error to allow Gray to testify as to the conversation between Dr..Styles and the plaintiff. *State* v. *Hoffmer*, 46 Vt. 182 ; *Sterling* v. *Sterling*, 41 Vt. 80 ; *Smith* v. *Royalton*, 53 Vt. 604. Dr. Bullard's testimony as to the plaintiff's symptoms was inadmissible. *Oakes* v. *Weston*, 35 Vt. 430 ; *Bank* v. *Isham*, 48 Vt. 590 ; *Fraiser* v. *Tupper*, 29 Vt. 409. The first three requests should have been complied with. *Bartlett* v. *Cabot, supra; Pratt* v. *Sherburne*, 53 Vt. 370.; *Perry* v. *Put-ney*, 52 Vt. 533 ; *Nourse* v. *Victory*, 51 Vt. 275. We insist that the notice was not sufficient to warrant any recovery. *Law* v. *Fairfield*, 46 Vt. 425 ; *Butts* v. *Stowe*, 53 Vt. 600.

*Grout & Miles*, for the plaintiff.

The defendant cannot stand on its first exception, that the notice did not sufficiently describe the defect. 12 Vt. 456. The notice as a whole was sufficient. *Pratt* v. *Sherburne*, 53 Vt. 370 ; *Perry* v. *Putney*, 52 Vt. 533 ; *Nourse* v. *Victory*, 51 Vt. 275. The evidence as to the adjoining plank was admissible. 1 Stark. Ev. s. 7 ; *Richardson* v. *Royalton, etc., T. Co.*, 6 Vt. 496 ; *Green* v. *Donaldson*, 16 Vt. 162 ; *Walker* v. *Westfield*, 39 Vt. 246 ; *Kent* v. *Lincoln*, 32 Vt. 591. Also Dr. Carter's testimony. 1 Green. Ev. s. 102 ; 6 East, 488 ; 11 Allen, 322 ; 32 Vt. 404 ; 45 Vt. 275 ; 48 Vt. 350. Also Dr. Bullard's testi-mony. 54 Vt. 150. The charge was correct. *Perry* v. *Put-ney*, 52 Vt. 533.

The opinion of the court was delivered by

ROYCE, CH. J. The notice of the defect in the bridge was sufficiently definite and certain. It does not appear that the

plaintiff knew of the hole in the plank through which his horse
stepped until after he had given the notice.  He was justified in
believing that the hole was made by the weight of his horse; and
hence, he properly described the defect as being such a condition
of the bridge that it would not sustain the weight of his horse.
He gave as particular a description of the defect as he was
capable of doing, and it does not appear that the town was mis-
led by the description given.  There was no error in admitting
evidence as to the condition of the plank adjoining the one
through which the horse stepped, for the purpose indicated; and
the jury were properly instructed as to the use to be made of it.
The injuries that the plaintiff claimed to have sustained were
sufficiently described.  The parts of his body that he claimed
were injured were specially mentioned; and there is nothing to
show but what the effects of the injuries were described as far as
he was then able to describe them.  The injuries recovered for
were not then patent, but were subsequently developed, and were
occasioned by the injuries described; and the case falls within
the rule established in *Perry* v. *Putney*, 52 Vt. 533, and *Rey-
nolds* v. *Burlington*, 52 Vt. 300.  The exceptions taken to the
admission of evidence were none of them well taken.  The
answer of Barber, on his cross-examination, that he heard after-
wards, and thought on the same day that the accident happened,
that the plaintiff had been thrown off from a hearse, had no ten-
dency to show whether he had been thrown off or not; and
although it was hearsay evidence, it was not prejudicial to the
defendant.  It is unnecessary to decide whether the question
taken in connection with his testimony in chief was permissible
or not.  Dr. Brooks testified that upon his examination of the
plaintiff he found no indications then existing of internal piles;
and was asked if he did not say at the time of the examination
that there were no indications of piles, and he replied that there
were no indications of internal piles.  Dr. Browne, who was a
witness and participated in the examination testified to by Dr.
Brooks, was asked on cross-examination if at the time of the
examination Dr. Brooks did not announce that there was no evi-

dence of piles. His answer was that Dr. Brooks said that there was no internal evidence of piles, thus corroborating the evidence given by Dr. Brooks. If the question 'put to Dr. Browne had been put for the purpose of and the answer given to it had tended to impeach Dr. Brooks, inasmuch as he was the defendant's witness, it would have been error to have admitted it; but the answer given had no such tendency, and hence there was no error. Dr. Bullard made an examination of the plaintiff in 1879–80, and during the trial, and was permitted to testify that he did not think his symptoms, as a whole, that he complained of in 1879 were inconsistent with his symptoms at his last examination. Dr. Bullard was testifying as to his personal observations and as an expert, and it is obvious that the idea he intended to convey and did convey was that he did not discover any perceptible change from the first examination to the last. The enquiry made of the doctor as to how well he was satisfied that the plaintiff was suffering from nervous injury was objectionable in form, in assuming that he was thus suffering; but the answer given did not prejudice the defendant, for it did not tend to show that there was any such suffering. ˙ There was no error in the admission of the witness, Gray, as to the conversation between the plaintiff and Dr. Stiles; it was admissible as tending to impeach Dr. Stiles, who had in substance denied having had any such conversation as the witness testified to having heard.

The judgment is affirmed.